IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUDY COBB DENNARD, | * |
| v. | * Civil No. JFM-14-1330 |
| TOWSON UNIVERSITY, ET AL. | * |

## MEMORANDUM

Plaintiff Trudy Cobb Dennard brings this lawsuit against Towson University and Susan Picinich (collectively "defendants"), seeking damages and injunctive relief under the self-care provision of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq*; Title 20 of Md. Code Ann., State Gov't; and 42 U.S.C. § 1981 for Dennard's alleged discriminatory demotion.  Now pending is defendants' motion to dismiss Count I of Dennard's complaint, the FMLA self-care claim, based on state sovereign immunity.

No oral argument is necessary. *See* Local Rule 105.6.  For the reasons set forth below, the court grants defendants' motion to dismiss in part and denies it in part.

## BACKGROUND

Plaintiff Dennard, an African-American, was hired in 2004 as an Associate Dean of the College of Fine Arts and Communication ("COFAC") at Towson University by then-Dean Christopher Spicer.  (Compl., ECF No. 2 ¶¶ 2, 9–10).  She performed well in that role, and received favorable reviews, salary increases, and awards.  (*Id.* ¶ 9).  Dean Spicer left Towson in June 2011 and was replaced by co-defendant Susan Picinich.  (*Id.* ¶ 10).  At that time, Dennard

was the sole African-American among the COFAC Council Chairs who reported directly to Dean Picinich.  *Id.*

Dennard alleges that Picinich began "[a]lmost immediately" to treat Dennard differently than her white co-workers, such as asking Dennard (but not her white co-workers) to "draft a new job description" for the Associate Dean position (Dennard's position) that removed certain responsibilities.  (*Id.* ¶¶ 11–12).  Also, in September 2011 Dennard began suffering from a previous physical impairment.  (*Id.* ¶ 13).  It affected her mobility, and Dennard took medical leave from November 18, 2011 through January 9, 2012 to undergo surgery.  (*Id.* ¶ 14).  Upon returning to Towson on January 9, 2012 Dennard requested a reduced work schedule per her doctor's recommendations.  (*Id.* ¶ 15).

On January 31, 2012, Dean Picinich notified Dennard that she was being removed as Associate Dean, effective that day.  (*Id.* ¶ 17).  Dennard's salary was accordingly reduced by more than $20,000, to an annual amount lower than when she was hired in 2004.  *Id.*  Picinich explained that she wanted "to build her own team" so that she could "work more effectively with the department chairs," which necessitated "a change in the office."  (*Id.* ¶¶ 17–18).  Defendants posted a vacancy announcement for Dennard's former Associate Dean position on April 10, 2012.  (*Id.* ¶ 19).  Dennard later discovered an internal email that referred to Dennard's demotion as "a sensitive situation."  (*Id.* ¶ 20).

Dennard alleges that she was demoted because of her disability and race, and filed a complaint in the Baltimore County circuit court on January 31, 2014 with three counts: a FMLA self-care claim against Towson and Picinich in her individual and official capacities (Count I); a Title 20 (race and disability) claim against Towson (Count II); and a § 1981 claim against Picinich in her individual and official capacities (Count III).  Defendants removed Dennard's

complaint to this Court on April 18, 2014, (ECF No. 1), and filed a motion to dismiss Count I of her complaint on August 14, 2014. (ECF Nos. 23, 24).[1]

## STANDARD

An assertion of governmental immunity is properly addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows defendants to challenge an action for lack of subject matter jurisdiction. *See Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

When a governmental entity challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Id.* The district court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)). The district court should only grant the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks

---

[1] Towson and Picinich each filed separate motions to dismiss Count I on the same day, ECF Nos. 23 and 24, respectively. Dennard has also filed a motion to strike defendants' reply brief as untimely. (ECF No. 28). Although Dennard is correct that the scheduling order (ECF No. 22) required the reply brief to be filed by September 23, 2014, and defendants actually filed it on September 29, 2014, (ECF No. 26), the court will consider defendants' mistake an innocent one. The docket entry for Dennard's reply in opposition brief listed September 29 as the date by which defendants' reply was due per local rules, and it is likely that defendants mistakenly relied on this date rather than the date in the scheduling order. Accordingly, Dennard's motion to strike is denied.

and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

## ANALYSIS

Defendants move to dismiss Count I of Dennard's complaint, the FMLA self-care claim. Defendants argue that sovereign immunity bars monetary relief against Towson and Picinich in her official capacity, and that Picinich cannot be liable in her individual capacity under the self-care provision of FMLA because she is not within the "employer" definition.[2] Each argument is addressed in turn.

**I. Towson University is Immune from Monetary Relief.**

Towson argues that Dennard's claim against it is barred by common law sovereign immunity. Dennard responds by arguing that Maryland has waived its sovereign immunity defense against FMLA lawsuits. For the reasons discussed below, Towson is correct, and accordingly its motion to dismiss Count I as to it is granted.

**A. Sovereign immunity.**

Common law state sovereign immunity—a state may not be sued by a private citizen absent its consent—is "firmly embedded in the law of Maryland." *Stern v. Bd. of Regents, Uni.*

---

[2] Defendants concede that Dennard has pleaded a claim upon which injunctive relief can be granted against Towson and Picinich in her official capacity.

*Sys. of Md.*, 846 A.2d 996, 1001 (Md. 2004).  Common law sovereign immunity "predated" adoption of the Eleventh Amendment, which "confirmed, rather than established, sovereign immunity as a constitutional principle." *Stewart v. N. Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) (quoting *Alden v. Maine*, 527 U.S. 706, 728–29 (1999)).[3]  A state's sovereign immunity is subject to limitations and exceptions, however, including a state's voluntary waiver of the defense and through abrogation by Congress pursuant to its power under §5 of the Fourteenth Amendment.

Specifically regarding a state's liability for monetary damages under FMLA's self-care provision, the Supreme Court recently held that Congress did not validly abrogate state sovereign immunity under § 5 when it enacted FMLA.  *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1334 (2012).  A private citizen may only recover monetary damages from a state under a FMLA self-care claim, therefore, if the state has voluntarily waived its sovereign immunity. *See id.* at 1337 ("Of course, a State need not assert its . . . immunity from suits for damages.").

Whether a state has waived its sovereign immunity in a specific instance "is a matter of state law." *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). Accordingly, the Maryland Court of Appeals adopted a two-part test to determine whether sovereign immunity applies in a specific case: (1) does the entity asserting sovereign immunity qualify, and (2) has the Legislature waived the immunity.  *See Stern*, 846 A.2d at 1001.[4]  When analyzing a potential waiver of sovereign immunity under the second factor, Maryland courts "have strictly construed such waivers in favor of the sovereign," interpreting any waiver

---

[3] Towson notes that although its motion to dismiss is not based on sovereign immunity under the Eleventh Amendment, Towson has not waived that argument. (ECF No. 23-1 at p. 1 n.1).
[4] Dennard argues that defendants waived sovereign immunity by voluntarily removing her case to this court.  That argument is incorrect as a matter of law.  *See Stewart*, 393 F.3d at 488–90 (holding that as long as a state did not waive its sovereign immunity in state court, removing the case to federal court to resolve the issue does not, by itself, waive the defense).

provisions narrowly. *Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 973 A.2d 233, 240 (Md. 2009); *see also Stern*, 846 A.2d at 1012–13 (deciding to "construe legislative dilution of governmental immunity narrowly").

### B. Maryland has not waived Towson's immunity against FMLA self-care claims.

Applying the two-part *Stern* test, the court must first determine whether Towson is entitled to sovereign immunity before then analyzing if Maryland has waived that immunity.

The first factor is easily answered. Per statute, Towson University is a "constituent institution" of the University System of Maryland which is itself "an arm or agency of the state government" entitled to sovereign immunity. Md. Code Ann., Educ. § 12-101(6)(x); *see also Uni. of Md. v. Maas*, 197 A. 123, 124 (Md. 1938). Accordingly, Towson is entitled to sovereign immunity.

The second factor is a closer question. Dennard argues that Maryland has waived sovereign immunity with respect to FMLA claims brought by state employees, and cites two statutory provisions in support: Md. Code Ann., State Pers. & Pens. § 14-103, and Educ. § 13-207. Although each is a waiver of sovereign immunity, the court concludes that §§ 13-207 and 14-103 have limited scopes which do not encompass Dennard's complaint in this case.

First, Educ. § 13-207 does not waive Towson's sovereign immunity in this private civil complaint brought by Dennard. Although § 13-207 does waive sovereign immunity "in any administrative, arbitration, or judicial proceeding," the waiver is explicitly limited to such proceedings that are "held pursuant to this section . . . involving any type of employee grievance or hearing."[5] Count I of Dennard's complaint arises under federal law—FMLA's self-care

---

[5] Section 13-207 also only encompasses claims brought by "classified employees." Although defendants argue that Dennard is not "classified," that issue was not briefed and the court does not decide it here.

6

provision—not the Education article or a state policy or regulation.  Moreover, Dennard filed her complaint in state court instead of the formalized grievance procedure provided for in the same subtitle.  *See* Md. Code Ann., Educ. § 13-203.  Section 13-203 specifies a formal, three-step "grievance procedure" to adjudicate disputes between employees and their supervisors.  Indeed, § 13-207, the sovereign immunity waiver, is part of Title 13, Subtitle 2, entitled "University of Maryland Classified Employee Grievance Procedures."

In light of the principle to construe waivers of sovereign immunity narrowly, it seems clear that § 13-207 waives Maryland's sovereign immunity only in formalized grievance procedures brought by University System of Maryland employees alleging violations of enumerated state policies or regulations.  *Cf. Md. Military Dep't v. Cherry*, 854 A.2d 1200, 1204 (Md. 2004) (holding that Pers. & Pens. § 14-103, analogous to Educ. § 13-207, "merely operates to permit employees in the State Personnel Management System to invoke the administrative grievance procedure").

Had Dennard pursued her FMLA claim through the grievance process and been awarded monetary damages for Towson's violation of state policies or regulations, § 13-207 would have waived Towson's sovereign immunity and thus permitted Dennard's recovery.  Here, however, because Dennard chose to file her complaint in court—outside of the grievance process—§ 13-207 does not apply and Maryland's common law sovereign immunity applies with full force.  Accordingly, Dennard cannot recover monetary damages against Towson.

Second, the same reasoning also precludes applying the sovereign immunity waiver in State Pers. & Pens. § 14-103 to Dennard's complaint.  That provision similarly waives sovereign immunity in a "grievance or hearing that is held under" a regulation or policy governing University System of Maryland employees.  To reiterate, Dennard's complaint arises under

7

federal law, not a state policy or regulation, and Dennard did not initiate the formal grievance process provided for in State Pers. & Pens. § 12-201 (analogous to the grievance process in Educ. § 13-203).

Because neither Educ. § 13-207 or State Pers. & Pens. § 14-103 apply to Dennard's complaint, Towson's sovereign immunity precludes Dennard from recovering monetary damages against it.

## II. Picinich is also Immune from Monetary Relief in her Official Capacity.

It is well-established that suing a government officer in her official capacity is functionally equivalent to suing the state. *E.g.*, *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 544 (D. Md. 2008) ("Thus, suits against state officials in their official capacity should be treated as suits against the state.") (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).[6] Accordingly, any defenses (including sovereign immunity) available to the state are equally available to an officer sued in her official capacity. *See, e.g.*, *Lizzi v. WMATA*, 845 A.2d 60, 71 (Md. Ct. Spec. App. 2003) (holding that state sovereign immunity "immunizes to the same extent the individual defendants for acts committed within the scope of their official duties").

Accordingly, because Towson cannot be held liable for monetary damages, neither can Picinich in her official capacity.

## III. Picinich Can be Liable for Monetary Relief in her Individual Capacity under FMLA.

Count I of Dennard's complaint also seeks monetary relief against Picinich in her individual capacity, where sovereign immunity cannot be raised as a defense. *See, e.g.*, *Sales v. Grant*, 224 F.3d 293, 297 (4th Cir. 2000) (distinguishing liability in an official capacity from in

---

[6] Officers can be liable in their official capacities, however, for injunctive relief. *See, e.g.*, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). As noted above, defendants do not dispute their potential liability for injunctive relief.

an individual capacity). Nonetheless, Picinich argues, she cannot be held liable in her individual capacity because the text of the FMLA itself does not provide a cause of action against "individual supervisors of public agencies." (ECF No. 24-1 at p. 2). All parties agree that the Fourth Circuit has not opined on this specific issue. *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) ("[W]hether the FMLA imposes liability on employee supervisors in their individual capacities is an open question."). There is also a split among the circuit courts of appeals that have analyzed the issue.[7] After reviewing the cases, the court is persuaded that supervisors at public agencies can be individually liable for violating the FMLA.

The FMLA provision defining who and what constitutes an "employer" is admittedly cumbersome. *See* 29 U.S.C. § 2611(4)(A).[8] Subsection (ii)(I) includes within the "employer" definition "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer" (referred to henceforth as the "supervisor" section), while subsection (iii) includes "any public agency." *Id.* § 2611(4)(a)(ii)(I), (iii). Because "public agency" is in a separate subsection from the "supervisor" definition, some courts have concluded that supervisors at public agencies are not encompassed by the "employer" definition, and that

---

[7] *Compare Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003) (public supervisors cannot be held liable), *and Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999) (same), *with Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012) (public supervisors can be liable), *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) (same), *and Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002) (same).

[8] The term "employer"--
    (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
    (ii) includes--
        (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
        (II) any successor in interest of an employer;
    (iii) includes any "public agency", as defined in section 203(x) of this title; and
    (iv) includes the Government Accountability Office and the Library of Congress.

only private-sector supervisors can be individually liable. *See, e.g.*, *Sadowski v. U. S. Postal Serv.*, 643 F. Supp. 2d 749 (D. Md. 2009) (Bennett, J.). Other courts have reached the opposite conclusion, holding that public supervisors can be held individually liable. *See, e.g.*, *Reed v. Md., Dept. of Human Res.*, No. 12-0472, 2013 WL 489985 (D. Md. Feb. 7, 2013) (Hollander, J.).

First, the "strict" view. The *Sadowski* court largely adopted and applied the Sixth Circuit Court of Appeals' justifications from *Mitchell* to hold that FMLA does not define "employer" to include supervisors at public agencies. *Sadowski*, 643 F. Supp. 2d at 754–56 (citing *Mitchell*, 343 F.3d at 829–30). Briefly summarized, the "strict" view interprets § 2611(4) as having "distinct and independent" subsections, meaning that one cannot include a public supervisor within the "employer" definition because it requires linking two separate subsections: (iii), "public agency," *and* subsection (ii)(I), the "supervisor" section. "Strict" view courts cite the analogous provision in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, which defines "employer" in a single sentence to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. §203(d). Courts contrast that provision with § 2611(4), arguing that the latter purposefully placed "supervisor" and "public agency" into distinct subsections.

In addition to § 2611(4)'s structure, "strict" view courts also note two anomalies that result from "co-mingling" the subsections. First, those courts argue that co-mingling subsections under (A) would render § 2611(4)(B) superfluous, because "public agency" in (A)(iii) would already be deemed "a person engaged in commerce" by co-mingling (A)(iii) with (A)(i).[9] Second, "strict" view courts argue against co-mingling by noting that (ii)(II), the successor-in-interest provision, cannot be sensibly applied to subsections (iii) and (iv); the "public agency"

---

[9] § 2611(4)(B) states that "public agency" as used in § 2611(4)(A)(iii) "shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce."

and Government Accountability Office and the Library of Congress subsections, respectively. That is evidence, those courts argue, that Congress did not intend for one subsection to be applied to another.

On the other hand, at least three circuit courts of appeals and one court in this district have reached the opposite conclusion: FMLA's "employer" definition *does* encompass supervisors at public agencies. The *Reed* court refuted each of the arguments discussed above, starting with whether the subsections are separate and distinct, or if they are instead "meant to be read together." *Reed*, 2013 WL 489985 at *9. The *Reed* court concluded that although the various definitions are in separate subsections, "structural signals" such as the use of "and" in-between subsections (iii) and (iv) indicate that there is a "relationship between" the subsections. *Reed*, 2013 WL 489985 at *12; *see also Modica*, 465 F.3d at 185 (noting that the use of "and" following clause (iii) "suggests that there is some relationship between clauses (i)–(iv)").

In further support of the "co-mingling" view, courts cite 29 C.F.R. § 825.104(a)—promulgated by the U.S. Department of Labor—which states that "[e]mployers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer . . . and any public agency." That binding regulation collapses the distinct subsections of § 2611(4)(A) into one sentence, analogous to the FLSA statutory provision that does the same. *See Haybarger*, 667 F.3d at 414 ("Accordingly, the FMLA regulations leave little doubt that individual liability is available under the FMLA").

Finally, these courts have refuted the two anomalies cited by "strict" view courts. First, they argue that the "co-mingling" view does not render § 2411(4)(B) superfluous. Rather, it provides "a presumption that public agencies engage in commerce . . . reliev[ing] plaintiffs of the burden of proving" that public agencies qualify under (4)(A)(i). *Haybarger*, 667 F.3d at 416–17

(internal quotation marks omitted).  Second, even though (ii)(II) (successor in liability) cannot be sensibly applied to (iii), public agencies, it *can* be sensibly applied to (i), private employers.  *See Reed*, 2013 WL 489985, at *13.  The inapplicability of (ii)(II) to (iii) does not preclude the sensible application of (ii)(I) to (iii).

After reviewing both views on the issue, the court is persuaded that public supervisors are included within FMLA's "employer" definition.  Although the contrary view is certainly plausible, it seems too restrictive to hold that because Congress separated "public agency" from "supervisor" in § 2611(4), public supervisors are not subject to the same individual liability as private supervisors.  Such a reading also subjects public supervisors to liability under the FLSA, but not the FMLA, based purely on the former's single-sentence definition in contrast to the latter's separate subsections.  Moreover, a plain textual reading of §2611(4)(A) supports this conclusion.  Because an "employer . . . includes any 'public agency,'" a supervisor acting "in the interest of a [public agency]" is subject to liability just as a private supervisor is.  *See, e.g.*, *Haybarger*, 667 F.3d at 416 ("Therefore, an 'employer' 'means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees' and 'includes' both 'any person who acts, directly or indirectly, in the interest of an employer' and public agencies.").

Neither Picinich or the "strict" view courts that concur with her reading of § 2611(4) have proffered a justification for why Congress would have intended to preclude supervisory liability at public agencies under the FMLA when it has not done so in a multitude of other similar federal statutes.  *See, e.g.*, 29 U.S.C. § 203(d) (the FLSA "employer" definition).  That, in combination with a plausible textual reading of § 2611(4) that has been adopted by a majority of federal courts of appeals, is sufficient to hold that Picinich can be held individually liable for

monetary and injunctive relief under FMLA's self-care provision.  Accordingly, Picinich's motion to dismiss Count I as to her in her individual capacity is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Count I of Dennard's complaint is granted in part and denied in part.  To the extent that Count I seeks monetary relief against Towson and Picinich in her official capacity, the motion to dismiss is granted.  The motion to dismiss Count I is denied as to Count I's request for monetary relief against Picinich in her individual capacity.


     10/16/2014                                                      /s/
Date                                                               J. Frederick Motz
                                                                      United States District Judge